FILED
2014 Aug-27  AM 10:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **DAWN C. WILSON, an individual,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Civil Action No.:** |
| **CAVALRY SPV I, LLC, a** | ) |
| **corporation,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

**COMES NOW** the Plaintiff, Dawn C. Wilson, by and through counsel, and for Plaintiff's Complaint against the Defendant states as follows:

1. This action arises out of Defendant's repeated violations of the Fair Debt Collection Practices Act[1] (15 U.S.C. § 1692 et seq. [hereinafter "FDCPA"]), out of state law violations and out of the invasion of Plaintiff's personal and financial privacy by the Defendant and its agents in its illegal efforts to collect a consumer debt from Plaintiff.

2. The Plaintiff was sued for a debt she allegedly owed.

3. Defendant Cavalry SPV I, LLC (Cavalry) never had any intention of offering any proof at trial.

---

[1] Any reference the FDCPA or any part thereof encompasses all relevant parts and subparts thereto.

4.    Instead, the lawsuit against Plaintiff was filed in a hope of obtaining a default judgment or coercing Plaintiff into paying on a debt Plaintiff did not owe.

5.    Plaintiff won the lawsuit.

6.    Despite the fact that it lost the collection action, Cavalry continued to attempt to collect this alleged debt through credit reporting and assignment or sale of the alleged debt to another collector for collection.

## **JURISDICTION**

7.    Personal jurisdiction exists over Defendant as it has the necessary minimum contacts with the State of Alabama.   Defendant is a national collection agency collecting debt throughout the United States, including Alabama and has in fact collected debt in the State of Alabama.   Defendant has previously availed itself of the courts in the State of Alabama filing over 1,000 lawsuits in Alabama in 2014 alone.

8.    Plaintiff Dawn C. Wilson, while currently a resident of Arizona, consents to personal jurisdiction in this court.

9.    Subject matter jurisdiction exists under federal question jurisdiction (28 U.S.C. Section 1331) and through diversity jurisdiction (28 U.S.C. Section 1332) as the amount claimed exceeds $75,000.00 between these diverse parties.

2

## VENUE

10.  Venue is proper as the Defendant does business in this judicial district.

## PARTIES

11.  Plaintiff Dawn C. Wilson (hereinafter "Plaintiff" or "Wilson") is a natural person who is a resident of Arizona, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

12.  Defendant Cavalry SPV I, LLC[2], ("Defendant" or "Cavalry") is a foreign debt collection firm that engages in the business of debt collection throughout the United States and in this judicial district in Alabama.  It is a "debt collector" under the FDCPA.  It is incorporated in Delaware and has its principal place of business in Nevada.

13.  Defendant Cavalry, upon information and belief, allegedly buys defaulted consumer debt.

## FACTS

## RECOGNITION OF THE WIDESPREAD ABUSE BY COLLECTORS

14.  Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors.

---

[2] "Cavalry SPV I, LLC" or "Cavalry" means Cavalry directly or through its debt collectors, employees and agents and the collection law firm or firms that sued Plaintiff, credit reported against Plaintiff, or otherwise took any collection action against Plaintiff.

15.   Congress recognized that there are four social ills caused by abusive debt collection:  (1) Unnecessary personal bankruptcies; (2) Marital instability; (3) Loss of jobs; and (4) Invasions of individual privacy.

16.   Congress also found that it is fundamentally unfair for the abusive collection agencies to have an unfair competitive advantage over those honorable debt collectors that decide to obey the law and follow the rules.

17.   15 USC § 1692 is entitled "Congressional Findings and Declaration of Purpose" and it states as follows:

(a)   There is **abundant evidence** of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.

(b)   Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c)   **Means other than** misrepresentation or other **abusive debt collection practices are available for the effective collection of debts**.

(d)   Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e)   It is the **purpose** of this title to **eliminate abusive debt collection practices** by debt collectors, to **insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged**, and to promote consistent State action to protect consumers against debt collection abuses.

[Emphasis added].

4

## **The District Court Complaint**

18.    On or about October 4, 2012, Defendant Cavalry sued Plaintiff in the Trial Court of Massachusetts, Plymouth District Court Division, with a case number of 12-59CV-1136.

19.    This suit was filed by the Goldberg & Oriel collection law firm located in Massachusetts.

20.    In this suit, Defendant Cavalry asserted it was the owner through assignment by Bank of America/FIA Card Services ("BofA") of a certain debt allegedly owed by Plaintiff.

21.    Defendant Cavalry alleged that Plaintiff entered into an agreement with BofA on or about July 19, 2005.

22.    Defendant Cavalry alleged Plaintiff owed Cavalry $15,060.63 plus alleged interest of $5,000.81 for a total of $20,061.44.

23.    Defendant Cavalry also claimed court costs and attorney's fees and statutory interest of 12% from August 21, 2012.

24.    Defendant Cavalry knows that Plaintiff has never done business with Defendant Cavalry.

25.    No mention was made in the lawsuit that whoever sold the alleged debt to Cavalry disclaimed the accuracy of the records.

26.    The statute of limitations had run before Cavalry sued Plaintiff.

27.   Despite the fact that Cavalry knew or should have known that the statute had run, it filed suit on this stale debt against Plaintiff.

28.   Given this lawsuit, Defendant Cavalry would be expected to have an intention of proving its case.

29.   No such intention existed.

30.   Defendant Cavalry never intended to offer one shred of evidence to prove its case.

31.   This lawsuit, and the hundreds of other lawsuits filed by Cavalry every year, was filed with the intention of getting settlements from *pro se* consumers and default judgments on debts that Defendant Cavalry cannot and will not prove it has any right to collect on.

32.   Another intention of Defendant Cavalry was to continue to allow the case to move towards trial with the intent that the Plaintiff would be intimidated into paying on a debt not owed and/or would not show up at trial and a default judgment would be entered.

33.   Defendant Cavalry knew Plaintiff did not owe the debt sued on.

34.   Defendant Cavalry made numerous misrepresentations and false statements in the lawsuit.

35.   Defendant Cavalry misrepresented that a debt was owed – none was owed by Plaintiff to Defendant Cavalry.

36.   Defendant Cavalry misrepresented the amount owed when Plaintiff owed Defendant Cavalry nothing on this account.

37.   Defendant Cavalry misrepresented that Defendant Cavalry had standing and the right to bring the lawsuit when Defendant Cavalry did not have standing and did not have the right to bring the lawsuit.

38.   Defendant Cavalry did not own the debt at the time the lawsuit was filed.

39.   Defendant Cavalry did not own the debt at any time the lawsuit was pending.

40.   This suit was brought as part of a strategy and policy of scattershot litigation designed to sue consumers who do not owe the debt to Defendant Cavalry in order to coerce or deceive consumers into paying a debt not owed or to receive a judgment against the consumers.

### Cavalry Attempts to Serve Plaintiff with the Lawsuit at the Wrong Address

41.   Plaintiff was allegedly served with the lawsuit on or about April 29, 2013 at the address of 201 Sandwich Street, Plymouth, MA 02360.

42.   The lawsuit was served on previous friend of the Plaintiff's.

43.   Plaintiff was not living at that address at the time of service.

44.   In fact, Plaintiff never lived at that address.

45.   Plaintiff's friend contacted Plaintiff, who was living in Hawaii at the time, to inform her about the lawsuit.

46.   Afterward, Plaintiff contacted the District Court, Plymouth Division to find out about the lawsuit.

## Plaintiff Answers The Cavalry Lawsuit

47.   After contacting the Court, Plaintiff filed a Motion to Dismiss, *pro se,* on or about May 9, 2013.

48.   Plaintiff did not and does not owe the debt to Cavalry.

49.   In Plaintiff's Motion to Dismiss she denied the allegations and denied any knowledge of Cavalry.

50.   In Plaintiff's Motion to Dismiss, Wilson denied that she had been served and put Cavalry on notice that she did not and had not resided at the address at which they attempted to serve her.

51.   Wilson also filed an Answer denying the allegations of Defendant Cavalry on May 9, 2013.

52.   In her Answer, Wilson denied having entered into a contract with Cavalry or having done business with them and denied owing Cavalry any money.

53.   Defendant Cavalry received a copies of the Motion to Dismiss and the Answer denying the allegations.

54.   Defendant Cavalry understood that Plaintiff was refusing to pay on this debt.

55.   Defendant Cavalry understood that Plaintiff disputed this debt.

56.   Defendant Cavalry knew Plaintiff did not owe this debt.

## Cavalry Files Motion to Dismiss

57.   Wilson contacted counsel for Cavalry about dismissing the action.

58.   Counsel for Cavalry admitted that Wilson did not reside in Massachusetts and informed Cavalry of such.

59.   Counsel for Cavalry admitted they could not prove she owed the debt.

60.   Prior to the trial, Cavalry filed a Motion to Dismiss the case with prejudice.

61.   The case against Wilson was Dismissed with Prejudice by the Court on July 16, 2013.

62.   This ended the case Defendant Cavalry filed against Plaintiff.

## Defendant Cavalry Continues to try to Collect the debt even though its case was dismissed With Prejudice.

63.   Even though its case had been dismissed with prejudice, sometime after the dismissal, Cavalry referred or assigned the account to another debt collector.

64.   The account was assigned to the law firm of Cawley & Bergmann, LLP for collections.

65.   Cawley & Bergman, LLP collects the debt of others and at all times relevant hereto was acting as an agent of Cavalry and was collecting debt as a debt on Cavalry's behalf or a debt collector as that term is defined under the FDCPA.

66.   Cawley & Bergman wrote to Wilson on or about June 11, 2014 seeking payment on the very same account Cavalry had sued and lost in 2013.

67.   The letter to Wilson contains the follow information identifying Cavalry as the alleged Creditor and claiming she owes $21,417.50.   A portion of the letter is excerpted below:

June 11, 2014

| | |
|---|---|
| Creditor: | Cavalry SPV I, LLC |
| File Number: | 1628060 |
| Account Number: | ██████████ |
| Original Creditor: | Bank of America/FIA Card Services, N.A. |
| Account Balance: | $21,417.50 |

68.   The collection letter further seeks payment from Wilson on a dismissed debt as follows:



**AFFORDABLE OPTIONS TO RESOLVE THIS ACCOUNT!**

This office has been retained to collect a debt owed by you to Cavalry SPV I, LLC.

| Single Payment Option: | 3 Month Payment Plan: | Balance in Full Payment Plan: |
|---|---|---|
| ➤ Take **$6,639.42** off the balance. <br> ➤ Pay **$14,778.08** no later than **07/18/14**. <br> ➤ Your account will be considered **"Settled in Full"** after we post your payment.* | ➤ Take **$4,497.67** off the balance. <br> ➤ Pay over 3 equal monthly installments of **$5,639.94**. <br> ➤ First Payment due no later than **07/18/14** and every 30 days thereafter. <br> ➤ Your account will be considered **"Settled in Full"** after we post your final payment.* | ➤ Contact us to discuss an affordable monthly payment arrangement. <br> ➤ Your account will be considered **"Paid in Full"** once the account reaches a zero balance. |

### Cawley & Bergmann Continues to Collect a Debt Wilson Does Not Owe

69. On or about July 9, 2014 Wilson wrote Cawley & Bergmann informing them that she disputed the debt on which they were attempting to collect for Cavalry, stating she did not owe it.

70. In the July 9, 2014 letter, Wilson also informed Cawley & Bergmann and Cavalry that she disputed the validity of the debt.

71. In the July 9, 2014 letter, Wilson informed Cawley & Bergmann and Cavalry that the alleged claimed debt had been dismissed with prejudice in her favor by the Massachusetts courts in July 2013.

72. In the July 9, 2014 letter, Wilson further requested that any false information on her credit reports be corrected.

73. Despite Wilson's letter to Cawley & Bergmann of July 9, 2014, Cawley & Bergmann wrote Wilson on July 11, 2014 still attempting to collect the alleged debt.

74. In response to Wilson's letter, Cavalry and Cawley & Bergmann ignored the information provided by Wilson and ignored her requests to stop collecting the debt and only provided an alleged billing statement from Bank of America.

75. Cawley & Bergmann and Cavalry did not investigate Wilson's claims, but continued its collection efforts against her.

76. In the alternative, Cawley & Bergmann and Cavalry did investigate Wilson's claims in her letter of July 9, 2014, but Cavalry directed Cawley & Bergmann to continue its collection efforts any way.

## False Credit Reporting on Plaintiff's Credit

77. Credit reporting by Defendant Cavalry occurred before, during, and after the collection lawsuit.

78. Despite having lost the lawsuit where it claimed Wilson owed it, $20,061.44, Cavalry continued to report to the credit bureaus that she still owed money.

79. In fact, Cavalry reported in June 2014 to the credit bureaus that Wilson owed $21,418, over $1,000 more than it reported before it lost the collection lawsuit against her for this alleged debt.

80. This credit report was false.

81. Defendant Cavalry knew, or should have known, that its credit reporting was false, violating 15 USC § 1692e(8) and state law.

82. Defendant Cavalry knew that Plaintiff did not owe Defendant Cavalry any money on this debt.

83. Defendant Cavalry knew that Defendant Cavalry did not own the debt being credit reported.

84. The reason for the false credit reporting was to force the Plaintiff into paying a debt not owed.

## Remaining Factual Allegations Against Defendant Cavalry

85.   Defendant Cavalry is not the owner of this alleged debt.

86.   Defendant Cavalry has attempted to collect debt from Plaintiff when Plaintiff did not owe any money to Defendant Cavalry on this account.

87.   Defendant Cavalry has misrepresented the debt to Plaintiff.

88.   Defendant Cavalry has misrepresented the debt to the credit bureaus and third parties.

89.   This includes the amount of the debt, as none is owed.

90.   This includes the legal status of the debt, as none is owed.

91.   Defendant Cavalry has threatened to take action it knows is illegal for Defendant Cavalry to take.

92.   Defendant Cavalry knew that by its conduct described in this Complaint that the natural consequence – the desired consequence – would be that Plaintiff (and all others similarly situated) would be harassed, oppressed, and abused by the filing of a meritless lawsuit, the filing of a lawsuit on a debt not owed by Plaintiff, the filing of a lawsuit when Defendant Cavalry did not own the debt, by continuing to collect a debt from Wilson after the court had dismissed the case with prejudice, by false credit reporting, by misrepresenting numerous facts in the lawsuit, by threatening to take

Plaintiff's property and wages, and by all other wrongful acts described in this Complaint.

93.  The debt being collected is a consumer debt as defined by the FDCPA.

94.  Plaintiff is a "consumer" as defined by the FDCPA.

95.  Defendant Cavalry is a "debt collector" as defined by the FDCPA.

96.  Defendant Cavalry refused to give Plaintiff all required notifications and disclosures under the FDCPA.

97.  Defendant Cavalry has been repeatedly sued for filing suits with no basis to do so.

98.  Defendant Cavalry has been repeatedly sued for filing suits with no intention of proving the allegations in the lawsuits.

99.  Defendant Cavalry has been repeatedly sued for false credit reporting on debts not owed by consumers.

100.  Defendant Cavalry has been repeatedly sued for collecting debt after it has lost the collection action for the alleged debt.

101.  Defendant Cavalry has full knowledge of what it is doing by filing bogus lawsuits and illegal collection activities.

102.  Defendant Cavalry knows that it is suing  consumers who do not owe the debts being sued upon.

103. Defendant Cavalry knows that it is suing consumers on debts that Defendant Cavalry does not own.

104. The conduct of the Defendant Cavalry has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

105. It is a practice of the Defendant Cavalry to maliciously, willfully, recklessly, wantonly and/or negligently ignore and refuse to follow the requirements of the FDCPA and state law.

106. Defendant Cavalry knows its conduct is wrong, but it has chosen to conduct itself in this wrongful manner as a matter of corporate policy.

107. All actions taken by employees, agents, servants, debt collectors or representatives of any type for the Defendant Cavalry were taken in the line and scope of such individuals' employment, agency or representation.

108. This includes collection counsel for Defendant Cavalry who in all ways conducted themselves in the line and scope of their agency and representation of Defendant Cavalry.

109. All actions taken by the Defendant Cavalry were done with malice, were done willfully, and were done with either the desire to harm Plaintiff and/or with the knowledge that their actions would very likely harm Plaintiff and/or

that their actions were taken in violation of the FDCPA and/or state law and/or that they knew or should have known that its actions were in reckless disregard of the FDCPA and/or state law.

110. Defendant Cavalry has engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and/or credit reports and as such Defendant Cavalry is subject to punitive damages and statutory damages and all other appropriate measures to punish and deter similar future conduct by this Defendant and similar companies.

111. Defendant Cavalry is liable to Plaintiff through the doctrine of Respondeat Superior for the wrongful, intentional and negligent acts, errors, and omissions done in violation of state and federal law by their collection employees, agents and collection counsel, including but not limited to Cawley & Bergmann, including but not limited to violations of the FDCPA and state tort law, in its attempts to collect this debt from Plaintiff.

## SUMMARY

112. All of the above-described collection activities made to Plaintiff by Defendant Cavalry were made in violation of the FDCPA, including (but not limited to) §§1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(8), 1692e(10), 1692e(11), 1692f, 1692f(1), 1692f(6), and 1692g.

113. The above-detailed conduct by the Defendant Cavalry of harassing Plaintiff in an effort to collect this debt was also an invasion of Plaintiff's privacy and resulted in actual damages to the Plaintiff.

114. This series of abusive collection actions by Defendant Cavalry caused Plaintiff stress and anguish.

115. Defendant Cavalry's attempts to collect this debt from Plaintiff and refusal to stop violating the law is an invasion of Plaintiff's privacy and Plaintiff's right to be left alone.

116. Plaintiff has suffered actual damages as a result of these illegal actions by Defendant in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

## NEGLIGENT AND WANTON HIRING, TRAINING AND SUPERVISION

117. Defendant Cavalry negligently and/or wantonly hired, retained, trained or supervised incompetent debt collectors, employees, agents and collection counsel and are thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

## CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692 et seq.

118. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

119. The acts and omissions of Defendant Cavalry constitute numerous and multiple violations of the FDCPA with respect to the Plaintiff, including (but not limited to) §§1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(8), 1692e(10), 1692e(11), 1692f, 1692f(1), 1692f(6), and 1692g.

120. As a result of Defendant Cavalry's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant Cavalry.

### COUNT II.

### INVASION OF PRIVACY

121. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

122. State law recognizes Plaintiff's right to be free from invasions of privacy and Defendant Cavalry violated state law as described in this Complaint.

123.   Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

124.   Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

125.   Defendant Cavalry intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and/or private concerns or affairs of the Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

126. Defendant Cavalry intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

127. Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

128. The conduct of Defendant Cavalry, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by Defendant Cavalry which occurred in a way that would be highly offensive to a reasonable person in that position.

129. This conduct includes the filing of a public lawsuit against Plaintiff.

130. Defendant Cavalry filed a public lawsuit that has no merit and Defendant Cavalry knew at the time it filed the lawsuit that it had no merit.

131. This also includes continuing to try to collect a debt from Plaintiff, even after the dismissal of the lawsuit that Defendant Cavalry knew or knows she does not owe.

132. Defendant Cavalry has continued to publicly state through credit reporting that Plaintiff owes the debt to Defendant Cavalry when Defendant Cavalry knows this is untrue.

133. All of the other wrongful acts described in this Complaint demonstrate the wrongful scheme, plan, and design of Defendant Cavalry in its campaign of improper debt collection which has led to the Plaintiff's privacy being invaded.

134. As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendant Cavalry.

135. All acts of Defendant Cavalry were committed with malice, intent, wantonness, and/or recklessness and as such Defendant Cavalry is subject to punitive damages.

## COUNT III.

### NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING, TRAINING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

136. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

137. Defendant Cavalry's agents, employees, collection counsel and collectors are allowed and encouraged to break the law in order to collect debts.

138. This includes all of the violations of the law described in this Complaint.

139. Defendant Cavalry is aware of the wrongful conduct of its collectors, employees, agents and collection counsel.

140.  Defendant Cavalry negligently, wantonly, and/or intentionally hired, trained, retained, or supervised incompetent debt collectors,  employees, agents and collection counsel who were allowed or encouraged to violate the law as was done to Plaintiff, and Defendant Cavalry is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

## COUNT IV.

## WANTON, MALICIOUS, AND INTENTIONAL CONDUCT

141.  All paragraphs of this Complaint are expressly adopted and incorporated as if fully set forth herein.

142.  Defendant Cavalry had a duty, and assumed a duty, to treat Plaintiff fairly and with reasonable care.

143.  Defendant Cavalry had a duty, and assumed a duty, to not unreasonably cause harm to Plaintiff.

144.  Defendant Cavalry acted with malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiff as set forth in this Complaint.

145.  Defendant Cavalry violated all of the duties Defendant Cavalry had and such violations were made intentionally, willfully, recklessly, maliciously, and wantonly.

146. It was foreseeable, and Defendant Cavalry did in fact foresee it, the actions of Defendant Cavalry would lead and did lead to the exact type of harm suffered by Plaintiff.

147. Defendant Cavalry acted with malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiff as set forth in this Complaint.

148. Defendant Cavalry invaded the privacy of Plaintiff as previously set forth under state law.

149. Such malice, wantonness, recklessness, willfulness, and/or intentional conduct proximately caused the damages set forth in this Complaint.

150. As a result of this conduct, action, and inaction of Defendant Cavalry, Plaintiff has suffered damages as set forth in this Complaint.

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that judgment be entered against all Defendants for all damages allowable (including statutory, actual, compensatory, nominal and punitive, the total of which Plaintiff claims more than $75,000.00), costs, expenses, fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

Respectfully Submitted,

**M. Stan Herring (ASB-1074-n72m)**
**M. Stan Herring (ASB-1074-n72m)**
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com
**Attorneys for Plaintiff**


**PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS CAUSE.**

**Attorney for Plaintiff**


**Serve defendant via certified mail at the following address:**

Cavalry SPV I, LLC
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104